IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


JULIE VELARDE,

      Plaintiff,

v.                                                                          No. 1:23-cv-00878-DHU-JMR

TAOS COUNTY ADULT DETENTION CENTER,
THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF TAOS, COUNTY OF TAOS,
LEROY VIGIL, in his official and individual capacities
as INTERIM WARDEN OF THE TAOS COUNTY
ADULT DETENTION CENTER, BRENT JARAMILLO,
in his official capacity as TAOS COUNTY MANAGER,
and DOES 1 through 3,

      Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

      Plaintiff Julie Velarde alleges that while she was an inmate at the Taos County Adult

Detention Center ("TCADC"), she was unreasonably pepper sprayed and handcuffed despite

posing no threat to correctional officers. The County Defendants[1] moved to dismiss the complaint

under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), highlighting several procedural

defects. In her response, Plaintiff largely stipulated to the County Defendants' objections, but

maintained that she has a viable claim under *Monell v. Dep't of Soc. Servs. of City of New York*,

436 U.S. 658, 660, 98 S. Ct. 2018, 2020, 56 L. Ed. 2d 611 (1978) ("*Monell*"). After carefully

considering the motion, briefs, and being fully advised of the premises, the Court concludes that

---

[1] The County Defendants are the TCADC, the Board of County Commissioners of the County of Taos ("the Board"), the County of Taos ("the County"), and Taos County Manager Brent Jaramillo ("Jaramillo"). According to the County Defendants, "Defendant Leroy Vigil has not been properly served in accordance with Fed. R. Civ. P. 4 or 1-004 NMRA." Doc. 4 n.1.

Plaintiff's allegations fail to establish a *Monell* claim, but that she will be granted leave to amend her complaint to substantiate such a claim.

## I. FACTUAL BACKGROUND

On or about August 25, 2020, Plaintiff was incarcerated at the TCADC. Compl. ¶ 9, Doc. 1-2. Employees or agents of TCADC requested that Plaintiff put on an anti-suicide smock, which is a one-piece garment that prevents an inmate from tying a noose. *Id.* ¶ 10. Plaintiff felt that she was being bullied by the employees or agents of Defendant TCADC for speaking out and addressing her concerns. *Id.* ¶ 11. She told the officers present that she did not want to wear the smock. *Id.* ¶ 12.

Defendant Leroy Vigil ("Vigil"), the interim warden of TCADC, told Plaintiff that she would be pepper sprayed if she did not put on the smock. *Id.* ¶ 13. Without warning, an employee or agent of TCADC lifted her hand with the pepper spray cannister and sprayed Plaintiff in the face. *Id.* ¶ 14. At the time Plaintiff was pepper sprayed, she was standing against the wall with both arms behind her back and there were at least four other employees or agents of TCADC who stood in the immediate vicinity and took no action. *Id.* ¶ 15.

The person who pepper sprayed Plaintiff then walked toward Plaintiff, grabbed her, and handcuffed her with the four other employee or agents of the TCADC, who surrounded Plaintiff. *Id.* ¶ 16. Plaintiff alleges that she never displayed any signs of physical threats or threatening motions towards the employees around her and that a video that captured the events "clearly shows that Plaintiff was not being physically threatening and showed no signs of hostility when she was pepper sprayed." *Id.* ¶¶ 17, 18.

Over the last several years, according to Plaintiff, the TCADC has had an extensive history of use of excessive force and other civil rights violations against its inmates. *Id.* ¶ 19. Throughout

his employment at the TCADC, Vigil "has a known history of using excessive force against the inmates." *Id*. For example, before the August 25, 2020, Plaintiff was incarcerated at the TCADC on more than one occasion, and she "was abused and mistreated without justification by the employees or agents of the TCADC. *Id*. ¶ 20. According to Plaintiff, the "culture at the TCADC is known for its cruel punishment and wanton disregard for human life in treating its inmates like 'animals.'" *Id*. ¶ 21. Furthermore, the "abusive culture at the TCADC is exacerbated by the stress with the guards or agents of the TCADC associated with inadequate staffing, underpaid employees, and the lack of training." *Id*. ¶ 22. At the time of the incident at issue, the "TCADC was dealing with overcrowding and the staff at the TCADC violated the CDC Guidance on the Management of COVID-19 for Correctional and Detention Facilities." *Id*. ¶ 23.

According to Plaintiff, "scientific literature show[s] that overcrowded prisons can lead to insanity, mental health issues, and violent and unsafe conditions that are harmful to both staff working at overcrowded facilities and the mental well-being of inmates." *Id*. ¶ 24. "The negative consequences of this together with the long[-]standing pre-existing problems and issues at the TCADC facility can have detrimental impact on staff morale leading to increasing conflict and violence in the prison environment." *Id*. "Despite these ongoing issues and concerns that have been plaguing the TCADC for many years," the County has allegedly refused to take any action and make changes. *Id*. ¶ 25.

## II. PROCEDURAL BACKGROUND

In August 2023, Plaintiff filed a complaint in New Mexico state court. She brought claims under 42 U.S.C. § 1983 for violations of her constitutional rights under the Fourth and Fourteenth Amendments based on a failure-to-protect theory against all Defendants (Count I); an excessive force claim under the Fourth and Fourteenth Amendments against all Defendants (Count II); a

state-law negligence claim against the Board and the County (Count III); a *Monell* claim against

the Board and the County based on failure-to-train and negligent supervision theories (Count IV);

and a stand-alone punitive damages claim against all Defendants (Count V).

Following removal, the County Defendants moved to dismiss the complaint based on the

following six grounds:

- First, "the official capacity claim against [Jaramillo] is barred as duplicative of the claims already asserted against the [Board]."

- Second, "Plaintiff's claims against the Taos County and [the TCADC] … are barred by the application of Fed. R. Civ. P. 17 and NMSA 1978 § 4-46-1 which specifies all suits against a County entity must be levied against its Board of County Commissioners."

- Third, "Plaintiff's *Monell* claim fails because it lacks any allegation sufficiently describing a defective policy and fails to allege plausible causation facts or plausible deliberate indifference by the entity or any policymaker."

- Fourth, "Plaintiff's state law negligence claim is barred by the plain language of the New Mexico Tort Claims Act which specifies a two-year statute of limitations."

- Fifth, "Plaintiff cannot assert a stand-alone claim for punitive damages nor are punitive damages available against a municipal entity."

- Sixth, "Plaintiff's allegations against 'Doe' defendants must be dismissed because such defendants were not named within the applicable statute of limitations and Plaintiff may not amend to include additional Defendants after the statute of limitations has run…."

Doc. 4 at 2.

In her response, Plaintiff conceded many of these arguments and made the following

stipulations:

- "Plaintiff concedes that any official capacity claim against Defendant Jaramillo is barred by operation of law. Accordingly, Plaintiff will stipulate to a dismissal of Defendant Jaramillo."

- "Plaintiff concedes that [the County] and [the TCADC] are not subject to suit pursuant to the interplay between Fed. R. Civ. P. 17(b) and §4-46-1, NMSA 1978. Accordingly, Plaintiff will stipulate to the dismissal of [the County] and [the TCAD]."

- "Plaintiff concedes further to Defendants' contention that she may not amend to name

specific defendants after the statute of limitations has expired."

- "Plaintiff stipulates to the dismissal of all John Doe Defendants."

- "Plaintiff concedes to Defendants' argument concerning Plaintiff's Count V and stipulates to the dismissal of Plaintiff's Count V, a stand-alone claim for punitive damages."

- "Plaintiff concedes to Defendants' argument that Plaintiff's state claim for negligence in Plaintiff's Count III is barred by the statute of limitations and stipulates to the dismissal of Plaintiff's Count III."

Doc. 9, 1-2.

Plaintiff does, however, maintain that she has a viable *Monell* claim (Count IV) against the Board.[2] Alternatively, she requests leave to amend her complaint under Federal Rule of Civil Procedure 15 if her *Monell* allegations are deficient. In reply, the County Defendants maintain that her *Monell* allegations are insufficient. They did not, however, address her request to amend her complaint to substantiate a *Monell* claim.

### III. DISCUSSION

#### A. Legal Standard

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[3] Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167

---

[2] Although her complaint asserted a *Monell* claim against both the Board and the County, Plaintiff's response brief only mentions the Board, presumably because Plaintiff agreed to dismiss the County as a party.

[3] The County Defendants also moved to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) because the TCADC and the County "are not viable defendants." Doc. 4 n.2. Because Plaintiff stipulated to dismiss those two parties, the County Defendant' Rule 12(b)(2) motion is moot.

L. Ed. 2d 929 (2007). In reviewing a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017).

### B. *Monell* Analysis

"The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (citation omitted). "[M]unicipalities and other bodies of local government are 'persons' within the meaning of this statute." *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Therefore, "[u]nder *Monell*, a plaintiff may sue local governing bodies directly for constitutional violations pursuant to the body's policies." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018). However, "municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior*; they are responsible only for their *own* actions." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) (emphases in original) (citing *Monell*, 436 U.S. at 691–95, 98 S.Ct. 2018). To state a claim against a municipal entity, a plaintiff must allege facts showing three elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

The Court proceeds to the state-of-mind element because it is dispositive. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997)

(citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989)). "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)).[4]

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "While typically notice is established by proving the existence of a pattern of tortious conduct, it can also be established in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle*, 962 F.3d at 1241 (internal quotation marks omitted) (quoting *Waller*, 932 F.3d at 1284).

Here, Plaintiff alleges in her complaint that the Board "had an unofficial policy and custom of allowing gross deprivations of inmates' constitutional rights to occur at the TCADC" and that "[b]y allowing such violations to occur on a regular and systematic basis for many years, including the period of time when Plaintiff was incarcerated at the TCADC, Defendants Board and County

---

[4] The standard to meet the state-of-mind element changes depending on whether the plaintiff alleges that a policy is facially constitutional. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1240 (10th Cir. 2020). If the plaintiff alleges that a policy is unconstitutional on its face, then issues of fault and causation are straightforward. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question.") But if the plaintiff bases her claims on a facially lawful policy, then the deliberate indifference standard applies. *See Hinkle*, 962 F.3d at 1241. Here, the deliberate indifference standard applies because Plaintiff does not seem to allege that a facially unconstitutional policy existed.

showed deliberate indifference to the almost inevitable constitutional injuries that Plaintiff sustained." Doc. 1-2 ¶ 32. She further alleges that the Board "failed to establish adequate policies and procedures to direct its employees or agents on the use of excessive force and cruel and unusual punishment of the TCADC inmates," and that it "improperly supervised and failed to adequately train Defendants causing them to deprive Plaintiff of her right to due process." *Id*. ¶ 52–53.

The Court concludes that Plaintiff's allegations fail to show an official policy or custom "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769. First, "deliberate indifference ordinarily requires showing a pattern of similar instances." *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1254 (10th Cir. 2022). While Plaintiff's complaint establishes that system-wide problems like overcrowding and understaffing plague the TCADC and that "gross deprivations of inmates' constitutional rights" occur, these allegations are cast at a high level of generality. The lack of a description of similar instances therefore fails to show that the Board was on notice. In addition, Plaintiff has still not pleaded facts—as opposed to legal conclusions—about when these instances occurred, nor has she shown that the Board was aware that its policies created an "almost inevitable constitutional injury." *Schneider*, 717 F.3d at 769. In summary, there is so little information in the complaint to establish that facts available to the Board put it on actual or constructive notice that acts or omissions by officers were substantially certain to cause a violation of constitutional rights. Therefore, the County Defendants' motion to dismiss is granted. However, as explained below, Plaintiff should be granted leave to amend the complaint.

### C. Amending the Complaint

Perhaps sensing that her allegations are insufficient, in her response Plaintiff requested leave to amend her complaint. *See* Doc. 9 at 3 (Plaintiff stating that "[i]n the event that the Court

determines that Plaintiff has failed to plead sufficient facts to satisfy the *Monell* standard, Plaintiff moves for leave to amend her Complaint pursuant to the Fed. R. Civ. P. 15.") The County Defendants did not respond to this request.

Courts "should freely give leave when justice so requires." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1033 (10th Cir. 2020) (quoting Fed. R. Civ. P. 15(a)(2)). "The grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Minter vs. Prime Equipment Co.*, 451 F.3d. 1196, 1204 (10th Cir. 2006). Leave need not be granted on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

The Court grants Plaintiff's request for leave to amend her complaint because doing so could potentially yield a meritorious claim, and because the County Defendants did not respond to her request. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (a "district court should allow a plaintiff an opportunity to … amend the complaint when doing so would yield a meritorious claim"). Plaintiff's forthcoming amended complaint should address all elements of her *Monell* claim (policy, causation, and state of mind), *see Schneider*, 717 F.3d at 769, not just the deficiencies that the Court has highlighted. Plaintiff's amended complaint shall be filed on the docket within sixty (60) days of entry of this Memorandum Opinion and Order.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the County Defendants' Motion to Dismiss in Lieu of an Answer **(Doc. 4)** is **GRANTED**, but that Plaintiff's request to amend her complaint, as moved for in her response brief **(Doc. 9)**, is **GRANTED**. Plaintiff shall file her amended complaint on the docket within **sixty (60) days** of entry of this Memorandum Opinion and Order.

      **IT IS SO ORDERED**.

_____
   HON. DAVID HERRERA URIAS
   UNITED STATES DISTRICT JUDGE