IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JULIE VELARDE,

    Plaintiff,

v.                                                                                                                    No. 1:23-cv-00878-DHU-JMR

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF TAOS,
*in their individual and official capacities*,
and LEROY VIGIL, *in his official and individual capacities*
as INTERIM WARDEN OF THE TAOS COUNTY
ADULT DETENTION CENTER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie Velarde alleges that she was unreasonably pepper sprayed and handcuffed while she was an inmate at the Taos County Adult Detention Center ("TCADC"), despite posing no threat to correctional officers. The Board of County Commissioners of the County of Taos ("County Defendants")[1] have moved to dismiss Plaintiff's First Amended Complaint, Doc. 13, under Federal Rule of Civil Procedure 12(b)(6) ("Motion"). Doc. 15. In her response, Plaintiff conceded that her state claims and punitive damages claim are barred, but she maintains that she has a viable claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 660, 98 S. Ct. 2018, 2020, 56 L.Ed. 2d 611 (1978) ("*Monell*"). After carefully considering the Motion, briefs, and being fully advised of the premises, the Court concludes that Plaintiff's state claims and punitive damages claim are barred, but her *Monell* claim does plead a plausible cause of action

---

[1] Defendant Leroy Vigil has filed his own motion to dismiss. Doc. 29. This Order does not address Defendant Vigil's motion.

against the County Defendants. Therefore, the County Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.
## FACTUAL BACKGROUND

On or about August 25, 2020, Plaintiff was incarcerated at the TCADC. First Am. Compl. ¶ 5, Doc. 13. Employees or agents of TCADC requested that Plaintiff put on an anti-suicide smock, which is a one-piece garment that prevents an inmate from tying a noose. *Id*. ¶ 6. Plaintiff felt that she was being bullied by the employees or agents of Defendant TCADC for speaking out and addressing her concerns. *Id*. ¶ 7. She told the officers present that she did not want to wear the smock. *Id*. ¶ 8.

Defendant Leroy Vigil ("Vigil"), the interim warden of TCADC, told Plaintiff that she would be pepper sprayed if she did not put on the smock. *Id*. ¶ 9. Without warning, an employee or agent of TCADC lifted her hand with the pepper spray cannister and sprayed Plaintiff in the face. *Id*. ¶ 10. At the time Plaintiff was pepper sprayed, she was standing against the wall with both arms behind her back and there were at least four other employees or agents of TCADC who stood in the immediate vicinity and took no action. *Id*. ¶ 11.

The person who pepper sprayed Plaintiff then walked toward Plaintiff, grabbed her, and handcuffed her with the four other employee or agents of the TCADC, who surrounded Plaintiff. *Id*. ¶ 22. Plaintiff alleges that she never displayed any signs of physical threats or threatening motions towards the employees around her and that a video that captured the events "clearly shows that Plaintiff was not being physically threatening and showed no signs of hostility when she was pepper sprayed." *Id*. ¶¶ 23, 24.

Over the last several years, according to Plaintiff, the TCADC has had an extensive history of use of excessive force and other civil rights violations against its inmates. *Id*. ¶ 25. Multiple

lawsuits against Defendant Board have been filed since 2015 on behalf of inmates at TCADC alleging excessive force. *Id*. ¶ 17. Between 2015 and the time of the incident involving Plaintiff, Defendant Board had paid out over $1.5 million in settlements with former inmates of TCADC related to claims of battery, negligence, personal, and bodily injury. *Id*. ¶ 15.

At the time of the incident involving Plaintiff, Defendant Vigil had been employed by TCADC since 2013. *Id*. ¶ 13. Defendant Vigil's propensity to use excessive force, especially through the unreasonable use of pepper spray, was well known amongst TCADC staff and Defendant Board. *Id*. ¶¶ 14, 26. Between 2015 and the incident involving Plaintiff, numerous inmate grievances were filed against Defendant Vigil alleging excessive use of force. *Id*. ¶ 16. A former jail administrator at TCADC between 2016 and 2018, Nelson Abeyta, noted that he was particularly troubled by Defendant Vigil's use of pepper spray on inmates who were already restrained, especially when there were non-violent alternatives available. *Id*. ¶ 18.

The New Mexico Association of Counties, a nonpartisan group that represents public employees and elected officials, runs an accreditation program to help detention centers maintain basic standards. *Id*. ¶ 19. At the time of the incident involving Plaintiff, Defendant Board has never applied for membership. *Id*. ¶ 20.

Despite the numerous allegations directly against Vigil, a large amount of settlements getting paid out to inmates at TCADC, a number of lawsuits alleging excessive force and other civil rights violations against the acts and inactions of TCADC staff and employees, in May of 2020 Defendant Vigil was promoted two levels above his then rank of sergeant to interim director of TCADC, the highest position at TCADC and the equivalent of warden. *Id*. ¶ 21.

Before the August 25, 2020 incident, Plaintiff was incarcerated at the TCADC on more than one occasion, and she "was abused and mistreated without justification by the employees or

agents of the TCADC." *Id*. ¶ 27. According to Plaintiff, the "culture at the TCADC is known for its cruel punishment and wanton disregard for human life in treating its inmates like 'animals.'" *Id*. ¶ 28. Furthermore, the "abusive culture at the TCADC is exacerbated by the stress with the guards or agents of the TCADC associated with inadequate staffing, underpaid employees, and the lack of training." *Id*. ¶ 29. At the time of the incident at issue, the "TCADC was dealing with overcrowding and the staff at the TCADC violated the CDC Guidance on the Management of COVID-19 for Correctional and Detention Facilities." *Id*. ¶ 30. County Defendants have not developed a policy on the use of reasonable force at the jail. *Id*. ¶ 39.

According to Plaintiff, "scientific literature show[s] that overcrowded prisons can lead to insanity, mental health issues, and violent and unsafe conditions that are harmful to both staff working at overcrowded facilities and the mental well-being of inmates." *Id*. ¶ 31. "The negative consequences of this together with the long[-]standing pre-existing problems and issues at the TCADC facility can have detrimental impact on staff morale leading to increasing conflict and violence in the prison environment." *Id*. ¶ 32. "Despite these ongoing issues and concerns that have been plaguing the TCADC for many years," the County has allegedly refused to take any action and make changes. *Id*. ¶ 33.

## II.
## PROCEDURAL BACKGROUND

In August 2023, Plaintiff filed a complaint in New Mexico state court. Doc. 1-2. She brought claims under 42 U.S.C. § 1983 for violations of her constitutional rights under the Fourth and Fourteenth Amendments based on a failure-to-protect theory (Count I); an excessive force claim under the Fourth and Fourteenth Amendments (Count II); a state-law negligence claim (Count III); a *Monell* claim based on failure-to-train and negligent supervision theories (Count IV); and a stand-alone punitive damages claim (Count V). *Id.* Following removal, the County

Defendants moved to dismiss this initial complaint, Doc. 4, which the Court granted on April 29, 2024. Doc. 12. However, the Court allowed Plaintiff to amend her complaint. Doc. 12 at 10.

On June 28, 2024, Plaintiff filed her First Amended Complaint ("FAC"). Doc. 13. The FAC contains the same five causes of action as the initial complaint, but it alleges additional facts. The County Defendants moved to dismiss the FAC on the following grounds:

- "Plaintiff's *Monell* claims still fail to plead a plausible cause of action against the County Defendant," Doc. 15 at 4, because the FAC fails to "illustrate a viable claim of an unconstitutional policy," *id.* at 5, and the FAC fails to allege plausible claims of deliberate indifference to a known problem or causation. *Id.* at 7.

- "Plaintiff's state claims are barred by the plain language of the New Mexico Tort Claims Act and the New Mexico Civil Rights Act." *Id.* at 9.

- "Punitive damages are not available against a municipal entity and are not a stand-alone claim." *Id.* at 10.

In her response, Plaintiff concedes that her state claims and punitive damages claim are barred, but she maintains that she has a viable claim under *Monell* against the County Defendants.

## III.
## DISCUSSION

### A. Legal Standard

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In reviewing a motion to dismiss, the court "must accept all the well-

pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017).

   **B. *Monell* Analysis**

   "The two elements of a Section 1983 claim are (1) deprivation of a federally protected right by (2) an actor acting under color of state law." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (citation omitted).  "[M]unicipalities and other bodies of local government are 'persons' within the meaning of this statute." *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).  Therefore, "[u]nder *Monell*, a plaintiff may sue local governing bodies directly for constitutional violations pursuant to the body's policies." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1144 (10th Cir. 2023) (citing *Monell*, 436 U.S. at 690, 98 S.Ct. 2018).  However, "municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior*; they are responsible only for their *own* actions." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) (emphases in original) (citing *Monell*, 436 U.S. at 691–95, 98 S.Ct. 2018).  To state a claim against a municipal entity, a plaintiff must allege facts showing three elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

   The Court first assesses whether Plaintiff has alleged facts showing an official policy or custom.  A policy or custom for § 1983 municipal-liability purposes may take the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or

> supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283–84 (10th Cir. 2019) (citation omitted).

The Court finds that Plaintiff's FAC contains sufficient allegations about the County Defendants' informal custom of allowing gross deprivations of civil rights of inmates at TCADC by jail staff using excessive force, which amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. For example, Plaintiff alleges that Defendant Vigil, the interim warden of TCADC, had a known history and repeated pattern of using excessive force and pepper spraying multiple inmates at the TCADC prior to the incident with Plaintiff. FAC ¶ 53, Doc. 13. Defendant Vigil's propensity to use excessive force, especially through the unreasonable use of pepper spray, was well known amongst TCADC staff and the County Defendants. *Id.* ¶ 14. Between 2015 and the time of the incident involving Plaintiff, the County Defendants had paid out over $1.5 million in settlements with former inmates of TCADC related to claims of battery, negligence, personal, and bodily injury. *Id.* ¶ 15. Between 2015 and the incident involving Plaintiff, numerous inmate grievances were filed against Defendant Vigil alleging excessive use of force. *Id.* ¶ 16. Multiple lawsuits against the County Defendants have been filed since 2015 on behalf of inmates at TCADC alleging excessive force. *Id.* ¶ 17. A former jail administrator at TCADC between 2016 and 2018, Nelson Abeyta, noted that he was particularly troubled by Defendant Vigil's use of pepper spray on inmates who were already restrained, especially when there were non-violent alternatives available. *Id.* ¶ 18. At the motion to dismiss stage, these allegations are sufficient to show the existence of a custom, thereby satisfying the first element in the *Monell* analysis.

Next, the Court finds that Plaintiff's allegations also sufficiently establish "a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Plaintiff alleges that the County Defendants, through their actions and inactions, were the proximate cause of Plaintiff's injuries. For example, Plaintiff alleges that despite the numerous allegations directly against Vigil, a large amount of settlements getting paid out to inmates at TCADC, a number of lawsuits alleging excessive force and other civil rights violations against the acts and inactions of TCADC staff and employees, in May of 2020 Defendant Vigil was promoted two levels above his then-rank of sergeant to interim director of TCADC, the highest position at TCADC and the equivalent of warden. FAC ¶ 21, Doc. 13. The County Defendants persisted with a policy of understaffing TCADC, underpaying the staff at TCADC, and significantly, not developing a policy on the use of reasonable force at the jail. *Id.* ¶ 39. At the time of the incident involving Plaintiff, the TCADC was dealing with overcrowding. *Id.* ¶ 30. There are multitudes of scientific literature showing that overcrowded prisons can lead to insanity, mental health issues, and violent and unsafe conditions that are harmful to both staff working at overcrowded facilities and the mental well-being of inmates. *Id.* ¶ 31. Considering all of this context, there was an obvious risk of constitutional harm by allowing Defendant Vigil to continue working at TCADC and promoting him to interim director despite the vast number of allegations of excessive force against him. *Id.* ¶ 34. These allegations against the County Defendants indicate they were the moving force behind Plaintiff's alleged constitutional injury and therefore, Plaintiff's allegations are sufficient to satisfy the second element of her *Monell* claim.

Finally, the Court addresses the state-of-mind element. "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate

indifference' as to its known or obvious consequences." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390, 137 L.Ed. 2d 626 (1997) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L.Ed. 2d 412 (1989)). "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011)).[2] "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "While typically notice is established by proving the existence of a pattern of tortious conduct, it can also be established in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle*, 962 F.3d at 1241 (internal quotation marks omitted) (quoting *Waller*, 932 F.3d at 1284); *see also George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1254 (10th Cir. 2022) ("deliberate indifference ordinarily requires showing a pattern of similar instances.").

---

[2] The standard to meet the state-of-mind element changes depending on whether the plaintiff alleges that a policy is facially constitutional. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1240 (10th Cir. 2020). If the plaintiff alleges that a policy is unconstitutional on its face, then issues of fault and causation are straightforward. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question.") But if the plaintiff bases her claims on a facially lawful policy, then the deliberate indifference standard applies. *See Hinkle*, 962 F.3d at 1241. Here, the deliberate indifference standard applies because Plaintiff does not seem to allege that a facially unconstitutional policy existed.

Here, Plaintiff has satisfied the deliberate indifference standard because she alleges that County Defendants had notice that its actions or failures to act were substantially certain to result in a constitutional violation, because there was a known pattern of tortious conduct against inmates by County employees, including Defendant Vigil, and it chose to disregard the risk of harm, as there are no indications that it addressed the risk of harm posed by this pattern of conduct. For example, Plaintiff alleges that Defendant Vigil, the interim warden of TCADC, had a known history and repeated pattern of using excessive force and pepper spraying multiple inmates at the TCADC prior to the incident with Plaintiff. FAC ¶ 53, Doc. 13. Defendant Vigil's propensity to use excessive force, especially through the unreasonable use of pepper spray, was well known amongst TCADC staff and the County Defendants. *Id.* ¶ 14. As recounted above, between 2015 and incident involving Plaintiff, the County Defendants had paid out over $1.5 million in settlements with former inmates related to claims of battery, negligence, personal, and bodily injury. *Id.* ¶ 15. Between 2015 and the incident involving Plaintiff, numerous inmate grievances were filed against Defendant Vigil alleging excessive use of force. *Id.* ¶ 16. Multiple lawsuits against the County Defendants have been filed since 2015 on behalf of inmates at TCADC alleging excessive force. *Id.* ¶ 17. Notably, a former jail administrator at TCADC between 2016 and 2018, Nelson Abeyta, noted that he was particularly troubled by Defendant Vigil's use of pepper spray on inmates who were already restrained, especially when there were non-violent alternatives available. *Id.* ¶ 18. And yet, despite all of this, the County Defendants did not develop a policy on the use of reasonable force at the jail. *Id.* ¶ 39.

Taken together, Plaintiff has alleged there was a pattern of similar instances of use of excessive force at TCADC, including through the unreasonable use of pepper spray, which would have put County Defendants on notice. She has now pleaded facts, as opposed to in her initial

complaint, about the years when these instances occurred, and she has shown that the Board was aware that actions or failures to act created an "almost inevitable constitutional injury," *Schneider*, 717 F.3d at 769, because of the lawsuits it faced and settlements it paid related to battery, negligence, personal, and bodily injury on behalf of inmates at TCADC alleging excessive force. In sum, the FAC establishes that facts available to County Defendants put them on actual or constructive notice that acts or omissions by its officers were substantially certain to cause a violation of constitutional rights. Therefore, Plaintiff's *Monell* claim does plead a plausible cause of action against the County Defendants

## IV.
## CONCLUSION

In summary, the Court dismisses Plaintiff's state claims and punitive damages claim, as Plaintiff has conceded these claims are barred, but the Court finds that Plaintiff's *Monell* claim does plead a plausible cause of action against the County Defendants.

**IT IS THEREFORE ORDERED** that the County Defendants' Motion to Dismiss Plaintiff's First Amended Complaint in Lieu of an Answer **(Doc. 15)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED**.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE